736 So.2d 419 (1999)
Kevierre WEATHERSPOON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-CA-00627-COA.
Court of Appeals of Mississippi.
March 23, 1999.
*420 Robert E. Buck, Greenville, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
LEE, J., for the Court:
¶ 1. On September 1, 1996, Kevierre Weatherspoon was indicted for aggravated assault against Edward Williams. On October 28, 1996, Kevierre Weatherspoon withdrew his previous plea and entered a plea of guilty to the charge of aggravated assault. On January 31, 1997, approximately three months following his plea of guilty, Weatherspoon obtained new counsel and filed a "Petition For Post-Conviction Relief." The trial court determined the petition had no merit and the same was denied. From this denial, Weatherspoon perfects his appeal to this Court and argues that the guilty plea was involuntary due to misrepresentations made to him by counsel, and therefore, the trial court erred in denying his petition. Additionally, Weatherspoon argues that he received ineffective assistance of counsel. Finding his arguments without merit, we affirm.

FACTS
¶ 2. On September 1, 1996, Weatherspoon was indicted for aggravated assault against Edward Williams. There are two versions presented in this case relative to the events leading up to the assault of Williams. One version was that presented by Weatherspoon to his counsel, and the other version of events was presented to the court by Williams, the victim. Weatherspoon informed his attorney that the gun discharged while both he and Williams were fighting over the gun. Williams would later testify that he and Weatherspoon were in an altercation and when he began to retreat, Weatherspoon shot at him and the bullet grazed his shoulder.
¶ 3. Weatherspoon testified at the hearing on his petition for post-conviction relief, that his former counsel had stated if the victim were to testify to the effect that the shooting was accidental he would be placed on probation; however, it must be noted that the victim, Williams, testified to a different version of the events surrounding the shooting than originally anticipated. Weatherspoon claims that it was *421 counsel's statements relative to probation that induced him to plead guilty to the aggravated assault charge against him. Instead of probation, Weatherspoon was sentenced to twelve years in the custody of the Mississippi Department of Corrections with five years suspended. Weatherspoon is currently serving his seven year sentence.

I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT THE APPELLANT'S GUILTY PLEA WAS VOLUNTARILY ENTERED AND BY DENYING APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.
¶ 4. The first assignment of error argued by the appellant is that the trial court erred by finding his guilty plea to have been voluntary and in denying his petition for post-conviction relief. Appellant relies primarily upon Rule 8.04(3) of the Uniform Rules of Circuit and County Court Practice. The appellant argued in his petition for post-conviction relief that his plea of guilty was not voluntary, but was induced by a promise from counsel "that if he would change his plea to guilty he would not receive any time to serve but would be placed on probation by the court."
¶ 5. Our standard of review pertaining to voluntariness of guilty pleas is well settled: "this Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." Schmitt v. State, 560 So.2d 148, 151 (Miss.1990). In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. Henderson v. Morgan, 426 U.S. 637, 653, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "The question whether a plea of guilty [is] a voluntary and knowing one necessarily involves issues of fact." Sanders v. State, 440 So.2d 278, 283 (Miss.1983). It is essential that the plea be made by the defendant after proper advice by counsel, and it must be made with the defendant's full understanding of the consequences. Henderson v. Morgan, 426 U.S. 637, 653, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (citations omitted). Notwithstanding, it is possible that the thoroughness of the interrogation performed by the circuit court at the time the plea was tendered may be the most important evidence to consider. Sanders, 440 So.2d 278, 288 (1983). Not considering the advice a defendant may have been given by his counsel, the questioning performed by the circuit court and explanations to him of his rights and the resulting consequences of a guilty plea "may" be sufficient to render the guilty plea voluntary without anything else. Id. at 288. With all of this in mind this Court reviews the entire record to make a determination of whether the guilty plea of Weatherspoon was voluntary.
¶ 6. A review of the guilty plea hearing and the record of the hearing on Weatherspoon's petition for post-conviction relief reflects that Weatherspoon's plea was voluntary. At the guilty plea hearing the judge inquired as to whether Weatherspoon understood he was being charged with aggravated assault, and Weatherspoon answered in the affirmative. The judge then proceeded to have the substance of the charge read to Weatherspoon from the indictment. The judge then inquired whether Weatherspoon understood the charge against him, and again Weatherspoon answered in the affirmative. Additionally, both prior to and then again at the guilty plea hearing, Weatherspoon was informed of the maximum and minimum sentences that could be imposed for the crime he was charged. Furthermore, Weatherspoon stated under oath that he understood the penalties that could be imposed by the judge in his case and he had not been threatened or promised anything by anyone, including his attorney, in return for his plea of guilty.
¶ 7. In Sanders v. State, 440 So.2d 278, 287 (Miss.1983), the Mississippi Supreme Court made a distinction between "firm representation" by defense counsel relative to guilty pleas and sentencing as opposed *422 to a "generalized prediction." The Court stated:
At the evidentiary hearing, the Circuit Court's central concern will be the question of whether, under applicable substantive constitutional standards, Sanders' two pleas of guilty were voluntarily and knowingly entered with a full appreciation of the consequences of each plea. We emphasize that a mere expectation or hope, however reasonable, of a lesser sentence than might be meted out after conviction upon trial by jury will generally not be sufficient to entitle petitioner to relief in cases such as this. Yates v. State, 189 So.2d 917 (Miss.1966). Likewise, the generalized prediction of defense counsel that a lesser sentence is likely upon a plea of guilty is in and of itself insufficient to entitle petitioner to relief. Sanders, 440 So.2d at 287. Further, the mere representation by defense counsel that in his experience sentences imposed upon persons who plead guilty are somewhat less than those customarily given to persons convicted of comparable offenses after trial by jury is not enough. (citations omitted).
On the other hand, a firm representation by defense counsel that, if a plea of guilty be tendered, petitioner would receive a fixed, relatively lenient sentence, if in fact relied upon by petitioner in entering his plea, may be sufficient to entitle him to relief.
¶ 8. The burden of proving that a guilty plea is involuntary is on the defendant and must be proven by preponderance of the evidence. Schmitt v. State, 560 So.2d 148, 151 (Miss.1990)(Superseded by Miss.Code Ann. § 99-39-23 (Supp.1998)). Weatherspoon has failed to meet this burden. As aforementioned, the record reflects that Weatherspoon received all pertinent information from both counsel and the trial judge relative to his guilty plea and the sentencing that might be imposed. Weatherspoon's guilty plea was voluntary, and although Weatherspoon and his counsel had discussed the possibility of probation and Weatherspoon held out the hope that he would receive probation, he was made aware that there were no guarantees to a particular sentence that might be imposed by the court. The ultimate decision to plead guilty was left to Weatherspoon. We, therefore, find no reversible error by the trial court.

II. WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
¶ 9. The second assignment of error argued by the appellant is that he was denied effective assistance of counsel. Weatherspoon argues that he received ineffective assistance of counsel, not only to misleading statements made by his counsel relative to his sentencing, but in addition, Weatherspoon argues that his court appointed counsel was ineffective for several other reasons. Weatherspoon stated the following reasons: (1) counsel did not obtain or request discovery, (2) counsel did not interview any witnesses except the victim, (3) counsel did not know that there were any persons at the scene of the altercation other than the appellant and the alleged victim, (4) counsel did not consider going to trial, (5) counsel did not discuss any possible defenses with the appellant, and (6) counsel pled the appellant "open"and erroneously lead the appellant to believe that he would receive no more than a probationary sentence. Weatherspoon argues that all of these factors rendered the performance of counsel deficient.
¶ 10. In order to prevail on the issue of whether his defense counsel's performance was ineffective, it requires a showing that counsel's performance was deficient and that he was prejudiced by counsel's mistakes. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The burden is on the defendant to bring forth proof which demonstrates that both prongs of the *423 Strickland test are met. Moody v. State, 644 So.2d 451, 456 (Miss.1994) (citations omitted). There is a strong but rebuttable presumption that counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 456 (citations omitted). Accordingly, appellate review of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. "The deficiency and any prejudicial effect are assessed by looking at the totality of the circumstances. Carney v. State, 525 So.2d 776, 780 (Miss.1988).
¶ 11. At the hearing on the petition for post-conviction relief, the record reflected that Weatherspoon's former counsel had made no promises for probation. In fact, counsel had explained to Weatherspoon that the sentence given for the charge of aggravated assault would be determined by the judge and could be anywhere from probation to twenty years. The record further reflects at the guilty plea hearing the judge inquired as to whether Weatherspoon understood he was being charged with aggravated assault, and Weatherspoon answered in the affirmative. The judge then proceeded to have the substance of the charge read to Weatherspoon from the indictment. The judge then inquired whether Weatherspoon understood the charge against him and again Weatherspoon answered in the affirmative. On the day of the guilty plea hearing, Weatherspoon received a full explanation from the presiding judge of the possible sentence which might be imposed in his case. The trial judge informed Weatherspoon that he might even receive the maximum sentence of twenty years for the aggravated assault in question. Before Weatherspoon entered his plea of guilty he affirmatively acknowledged his understanding of the possible sentence that could be imposed and that he was still willing to enter his plea of guilty. Weatherspoon further stated that no one including his attorney had threatened or promised him anything in return for a guilty plea. At Weatherspoon's hearing on his petition for postconviction relief, Weatherspoon stated that he felt that his plea of guilty was in his best interest.
¶ 12. At the guilty plea hearing the record indicated that Weatherspoon was satisfied with the services of his lawyer. Additionally, the record stated that Weatherspoon felt his attorney had given him good advice about entering his plea of guilty. Further, Weatherspoon affirmatively acknowledged that his attorney had properly represented him at all stages of his case.
¶ 13. Testimony at the hearing on the petition for post-conviction relief disclosed proof that Weatherspoon's former counsel had consulted with Weatherspoon on several occasions relative to assisting Weatherspoon with his case prior to his guilty plea. The testimony showed that Weatherspoon and his counsel had personally conferred with each other on at least five occasions and there were also telephonic conversations between them. During these conferences with Weatherspoon, counsel attempted to obtain the names, addresses, and phone numbers of any witnesses to the shooting. Other than the victim's name, Weatherspoon was never forthcoming with any additional names of witnesses to the shooting. Weatherspoon claims that counsel never asked for any witnesses and that is why he never supplied any names.
¶ 14. Additionally, Weatherspoon protests the fact trial counsel did not participate in discovery before Weatherspoon entered his guilty plea. At the hearing on the petition for post-conviction relief counsel explained that he had been practicing criminal law approximately twenty-four and one-half years and still practiced law the "old way." Counsel chose not to conduct discovery because the State would be entitled to reciprocal discovery. Counsel preferred to "ambush the prosecution."
¶ 15. Weatherspoon argues that counsel failed to consider going to trial. Testimony at the hearing on the petition for postconviction relief reveals the opposite. In *424 fact, counsel claimed with the factual scenario provided to him by the appellant counsel felt it was best not to go to trial. Counsel stated the following reasons for believing that a trial would not be in the best interest of the defendant. "First of all, after repeated attempts, repeated requests of me to him, give me the list of any witnesses, names, phone numbers, and bring them in, I determined that there were no other witnesses besides he and the prosecuting witness. Number two, the fact that Mr. Weatherspoon was very forthcoming about the fact that he did have possession of the firearm, and he did have it in his hand when Mr. Williams was shot." Counsel further went on to explain that due to the information given to him by Weatherspoon and the negotiations with the district attorney he had decided to explain the open plea option to Weatherspoon.
¶ 16. Counsel further elaborated on his reasons in negotiating an open plea. Counsel testified that the district attorney's office was offering a certain number of years, and he was trying everything he could to avoid that, and trying to obtain a suspended sentence for Weatherspoon. "I would not have been able to have had any kind of chance to do that had we accepted the plea offer that the District Attorney's Office was obviously making." Counsel explained the open plea option versus the number of years offered by the district attorney to Weatherspoon and left the ultimate decision to him.
¶ 17. In Walker v. State, 703 So.2d 266, 268 (Miss.1997), this Court held that the defendant failed to establish that defense counsel was ineffective even though counsel only met with the defendant one time, failed to do any investigative work, and forced the defendant to plead guilty. The court found that conferring with the defendant only once, "does not, in and of itself, establish ineffective assistance of counsel," and failure to "make a pretrial investigation and to spend more time with him, are insufficient as a matter of law." Id. at 268. In the case at bar, the record reflects that counsel for Weatherspoon met with his client at least five times. Testimony also reflected that counsel had telephonic discussions with Weatherspoon. During both the office meetings and telephonic discussions counsel made several attempts to gather all the relevant information from Weatherspoon surrounding the events in question to enable him to assist Weatherspoon with any possible line of defense.
¶ 18. The list of errors provided by Weatherspoon delve mostly into the area of trial strategy and are therefore, at counsel's discretion. In Mississippi there is the presumption "that trial counsel's conduct is within the wide range of reasonable conduct and that decisions made by [trial] counsel are strategic." Vielee v. State, 653 So.2d 920, 922 (Miss.1995) (citations omitted). The testimony of Weatherspoon's former counsel relative to the errors brought before this Court by Weatherspoon reflected that the areas complained of were a result of strategical decisions made by counsel. An example of this was the fact that counsel chose not to conduct discovery because the State would be entitled to reciprocal discovery. Counsel preferred to "ambush the prosecution."
¶ 19. In the case at bar, following a review of defense counsel's actions in representing appellant we conclude that it was neither deficient or prejudicial. Testimony shows the actions of defense counsel revolved around his experience and the information that he had been provided by Weatherspoon. Weatherspoon's failing to be totally forthcoming and truthful with his counsel seems to be the greatest source of the prejudice complained of by Weatherspoon. Weatherspoon not only fails to show that counsel was deficient, but he also fails to prove that counsel's actions prejudiced him. In fact, after being advised by both counsel and the trial judge of his rights, the ultimate decision to plead guilty was left with Weatherspoon. The record reflects that prior to entering his guilty plea, the district attorney had *425 offered Weatherspoon a plea bargain which would have required Weatherspoon to serve an eight year sentence. Ultimately, Weatherspoon was sentenced to a twelve year sentence with five years suspended, requiring him to only serve seven years of the sentence. The outcome of the proceedings does not show a prejudice.
¶ 20. The appellant's arguments fail to meet the two-pronged standard of Strickland. We, therefore, find no reversible error by the trial court.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY DENYING POST CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.